IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ALLSTATE INDEMNITY
COMPANY, *ET AL.*
   *Plaintiffs.*

v.

                        Civil Action No. 4:24-cv-02573

AKASH BHAGAT, D.O., *ET AL.*
   *Defendants.*

# DEFENDANTS' MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

# TABLE OF CONTENTS

TABLE OF CONTENTS ................................................1

INDEX OF AUTHORITIES ...........................................3

NATURE AND STAGE OF PROCEEDINGS .....................6

ISSUES PRESENTED ...............................................7

INTRODUCTION ................................................. 8

ARGUMENT ......................................................11

I.    STANDARD UNDER RULES (12)(B)(6) AND 9(B).............13

II.    ALLSTATE HAS FAILED TO STATE A CLAIM UNDER RICO.
.................................................................. 16

  A.    Allstate fails to adequately plead the mail fraud predicate. ......17

  B.    Allstate has failed to allege how any defendant "caused" the use
  of mail................................................................. 22

  C.    Allstate has failed to sufficiently allege actual reliance on any
  misrepresentation by any defendant. ................................. 24

  D.    Allstate does not allege facts establishing that the non-owner
  physician Defendants have participated in the operation or
  management of either alleged RICO enterprise.................................25

  E.    Allstate's alleged injury is inherently speculative. ...................27

  F.    Because Allstate has not plead a 1962(c) claim, it cannot plead a
  1962(d) claim. ........................................................32

III.    ALLSTATE HAS PLED ITSELF OUT OF COURT. ............... 32

  A.    Allstate's claims are barred by the judicial proceedings privilege
  and the witness immunity doctrine.....................................32

  B.    Justifiable reliance and proximate cause are foreclosed by
  Allstate's own allegations..............................................36

  C.    The 2022 depositions referenced in the complaint negate
  causation and reliance. ................................................39

IV.    ALLSTATE HAS STATED NO STATE LAW CLAIMS OVER
    WHICH THIS COURT SHOULD EXERCISE JURISDICTION. 42

  A.    The Court should decline to exercise supplemental jurisdiction.
    43

B.    Allstate has failed to state a claim for state-law fraud. .............43

C.    Allstate has failed to state a claim for civil conspiracy. ........... 44

D.    Allstate has failed to state a claim for money had and received. ...........................................................................45

E.    Allstate has failed to state a claim for unjust enrichment. ........47

V.    CONCLUSION AND PRAYER ........................................ 48

CERTIFICATE OF SERVICE ..................................... 50

# INDEX OF AUTHORITIES

## Cases

*Alameda Cnty. Employees' Ret. Assn. v. BP p.l.c. (In re BP p.l.c.)*, No. MDL No. 10-md-2185, 2013 U.S. Dist. LEXIS 171459 (S.D. Tex. 2013) ................. 24

*Allstate Inc. Co. v. Plambeck*, 802 F.3d 665 (5th Cir. 2015) ..........................26

*Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631 (S.D. Tex. 2016) ...........26

*Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398 (5th Cir. 2007).... 11

*Allstate Ins. Co. v. Rehab All. of Tex., Inc.*, No. 14-13-00459-CV, 2015 Tex. App. LEXIS 3973 (Tex. App.—Houston [14th Dist.] Apr. 21, 2015, pet. denied)..............................................................................................28, 29

*Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451 (2006) ............................. 30, 31

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ......................................... 14, 15, 39

*Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836 (5th Cir. 2004) .................45

*Bell A. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................14

*Bird v. W.C.W.*, 868 S.W.2d 767 (Tex. 1994) ...............................................35

*Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639 (2008).......................38

*Briscoe v. LaHue*, 460 U.S. 325 (1983) ........................................................33

*Brown v. de la Cruz*, 156 S.W.3d 560 (Tex. 2004) ........................................47

*Burns v. County of King*, 883 F.2d 819 (9th Cir. 1989)..................................34

*Cevallos v. Silva*, 541 Fed. Appx. 390 (5th Cir. 2013) ............................. 14, 30

*Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. EP-11-CV-166, 2011 WL 5976918 (W.D. Tex. Nov. 29, 2011)................................................... 24

*Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473 (2d Cir. 2014) .........18

*Davis v. Texas Farm Burau Ins.*, 470 S.W.3d 97 (Tex. App.— Houston [1st Dist.] 2015, no pet.) ...............................................................................37

*Day v. Johns Hopkins Health System Corp.*, 907 F.3d 766 (4th Cir. 2018) 33, 34

*DiVittorio v. Equidyne Extractive Ind., Inc.*, 822 F.2d 1242 (2nd Cir. 1987) ..18

*Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12 (1st Cir. 2000).........18

*FMC Int'l A.G. v. ABB Lummus Glob., Inc.*, No. H-04-3896, 2006 U.S. Dist. LEXIS 5291 (S.D. Tex. 2006) .................................................................18

*Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41 (Tex. 1998) ..................................................................... 27, 37

*Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671 (Tex. 2000)...................... 48

*Giffin v. Summerlin*, 78 F.3d 1227 (7th Cir. 1996) ........................................34

3

*Gines v. D.R. Horton, Inc.*, 699 F.2d 812 (5th Cir. 2012) .............................. 16

*Heden v. Hill*, 937 F. Supp. 1230 (S.D. Tex. 1996) ....................................... 17

*Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39 (Tex. 1992) ...47

*Hernandez v. Ciba-Geigy Corp. USA,* 200 F.R.D. 285 (S.D. Tex. 2001) ....... 24

*Hernandez v. Hayes*, 932 S.W.2d 648 (Tex. App.—San Antonio 1996, writ
    denied) .................................................................................................... 35

*Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992) ................ 30

*IAS Services Group, LLC v. Jim Buckley & Associates, Inc.*, 900 F.3d 640 (5th
    Cir. 2018) ........................................................................................... 24, 25

*In re Enron Corp. Securities, Deriv. & ERISA Litig.*, 540 F.Supp.2d 800 (S.D.
    Tex. 2007) ............................................................................................... 24

*In re Haber Oil Co., Inc.*, 12 F.3d 426 (5th Cir. 1994) ................................. 44

*James v. Brown*, 637 S.W.2d 914 (Tex. 1982) ............................................... 35

*lexander v. United States*, 509 U.S. 544 (1993) ........................................... 12

*McIntyre v. Wilson*, 50 S.W.3d 674 (Tex. App.—Dallas 2001, pet. denied) ..34

*McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206 (Tex. 1985) ............ 29

*Neder v. United States*, 527 U.S. 1 (1999) .................................................... 22

*Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926 (5th Cir. 2002)
    ................................................................................................................ 32

*Ortiz v. Collins*, 203 S.W.3d 414 (Tex. App.—Houston [14th Dist.] 2006, no
    pet.) ........................................................................................................ 37

*Pittman v. Cuyahoga County Dept. of Children and Family Svcs.*, 640 F.3d 716
    (6th Cir. 2011) ........................................................................................ 34

*Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909 (Tex. 1942) .................... 35

*Reves v. Ernst & Young*, 507 U.S. 170 (1993) .............................................. 26

*Sanchez v. Liggett & Myers, Inc.,* 187 F.3d 486 (5th Cir. 1999) ........................ 24

*Shell Oil Co. v. Writt*, 464 S.W.3d 650 (Tex. 2015) ....................................... 35

*Sullivan v. Leor Energy LLC*, Civ. Act. No. H-05-3913, 2006 WL 2792909
    (S.D. Tex. Sept. 27, 2006) ...................................................................... 24

*Sykes v. James*, 13 3d 515 (2d Cir. 1993) ....................................................... 34

*Tex. Med. Res., LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424 (Tex.
    2023) ........................................................................................................ 47

*Tilton v. Marshall*, 925 S.W.2d 672 (Tex. 1996) ........................................... 44

*Torres v. S.G.E. Management, L.L.C.*, 838 F.3d 629 (5th Cir. 2016) ............. 17

*Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269 (Tex. 1995) ........................... 22

*Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516 (7th Cir. 1995) ....................................................................................... 12

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3f 180 (5th Cir. 2009) ..15, 16

*United States v. Harms*, 442. F.3d 367 (5th Cir. 2006) .................................. 17

*Westcap Enter. v. City Colleges of Chicago*, 230 F.3d 717 (5th Cir. 2000) ...... 22

*Williams v. WMX Technologies, Inc.*, 112 F.3d 175 (5th Cir. 1997) ................. 16

## Statutes

18 U.S.C. § 1962(c) ........................................................................... 16

18 U.S.C. § 1962(d) ........................................................................... 17

28 U.S.C. § 1331 ................................................................................. 7

28 U.S.C. § 1367 ........................................................................... 7, 43

TEX. CIV. PRAC. & REM. CODE § 18.001 ...................................................... 36

## Rules

FED. R. CIV. 8(a)(2) ....................................................................... 13, 15

FED. R. CIV. P. 12(b)(6) ....................................................................... 14

FED. R. CIV. P. 9(b) ............................................................................. 15

## Nature and Stage of Proceedings

Plaintiffs, who are all auto insurance companies and subsidiaries of Allstate Corporation (collectively "Allstate"),[1] filed their original complaint, Dkt. 1, on July 10, 2024, against Defendants, who are doctors, medical clinics, and staff. Their 75-page complaint (not counting exhibits) asserts a litany of allegations and grievances centered on Allstate's assertion that Defendants billed too much for provision of medical treatment to patients injured in car wrecks caused by Allstate's insureds, and that those patients' lawyers included Defendants' bills with their settlement demands or produced them in discovery during litigation.

In a 75-page, 251-paragraph complaint, Allstate asserts claims under the Racketeer Influenced and Corrupt Organizations Act (RICO) and assorted state law claims. Allstate's claimed injury is that the amounts for which it compromised the disputed, unliquidated personal injury claims of Defendants' patients—amounts Allstate, an experienced, sophisticated auto insurance company, negotiated at arms' length with the patients' lawyers—

---

[1] Plaintiffs are Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate County Mutual Insurance Company, and Allstate Fire & Casualty Insurance Company. Plaintiffs make no effort in their complaint to differentiate their respective claims, so they will be addressed collectively as "Allstate" in this motion.

were "inflated." Pointedly, Allstate has not sued the patients or their lawyers, nor does it seek to rescind the "inflated" settlements. As explained below, the factual allegations supporting Allstate's causes of action are lacking.

Allstate has asserted federal question jurisdiction under 28 U.S.C. § 1331—based on its RICO claims—and supplemental jurisdiction over its state-law claims under § 1367. There is no complete diversity of parties— there is at least one Texas plaintiff and multiple Texas defendants.

Defendants agreed to waive service in response to waiver requests sent July 22, 2024. Accordingly, their current responsive pleading deadline is September 20, 2024.

## ISSUES PRESENTED

1. Does Allstate's complaint state a RICO claim meeting the standards of *Twombly*, *Iqbal*, and Rule 9(b)?

    a. Has Allstate met the requirements of Rule 9(b) in alleging the mail fraud predicates of its RICO claim?

    b. Has Allstate alleged facts sufficiently showing that the physician defendants participated in the management or operation of either alleged RICO enterprise?

    c. Is Allstate's alleged injury too speculative to support the causation element of its RICO claims or the injury element of its state law claims?

2. Has Allstate "pled itself out of court?"

    a. Are Allstate's claims barred by judicial proceedings privilege and the witness immunity doctrine?

    b. Are justifiable reliance and causation foreclosed by the adversarial context in which the alleged fraudulent statements were received?

    c. Is causation foreclosed by the 2022 depositions referenced in the complaint?

3. Has Allstate stated any state-law claims over which this Court should exercise jurisdiction?

    a. Should the Court exercise supplemental jurisdiction over Allstate's state law claims?

    b. Has Allstate stated a claim for state law fraud?

    c. Has Allstate stated a claim for unjust enrichment?

    d. Has Allstate stated a claim for civil conspiracy?

    e. Has Allstate stated a claim for money had and received?

## INTRODUCTION

It is no secret that medical care is expensive in America, and most Americans cannot afford to pay unexpected medical bills out of pocket. So we, as a nation, have come up with several ways to pay for medical care: Many have health insurance benefits provided by employers. Others buy health insurance on the open market. Millions, including the elderly and many of the poorest, have medical care provided through government programs. Some of the wealthiest pay through membership in "concierge" programs. Some, who

have no coverage at all, simply show up at emergency rooms, who by law cannot turn them away, and receive care that they can never pay for.

When someone without medical coverage is injured in a car wreck, his or her options for treatment can be limited. Liability insurers like Allstate will not simply pay the patient's medical bills as they come, and usually it will refuse to pay them at all except as part of a negotiated settlement or in satisfaction of a judgment against the insured after a trial that may occur years after the accident. Also, many doctors simply refuse to treat auto accident patients, insured or not, because they do not wish to be hauled into depositions by the insurance companies.

To address the needs of these patients, some doctors and facilities will agree to see patients and defer collection in reliance on the patient's lawyer's promise to protect the provider's bill out of any eventual settlement—a promise sometimes memorialized by a "letter of protection." Texas law provides for a similar—but unilaterally-imposed—arrangement for hospitals under its hospital lien statute.

Letters of protection are the only way many of these injured patients can receive adequate medical care. But Allstate does not like this arrangement, likely because it believes claims will be lower if people injured by their insureds

cannot see a doctor. For years now, Allstate has targeted medical providers for harassment by filing baseless civil RICO lawsuits like this one, seeking to relitigate hundreds of personal injury claims and lawsuits it has already settled.

Allstate's strategy has become a familiar one: When it identifies doctors or facilities it wishes to target, it will have specialized counsel—such as its attorney of record in this case—appear without warning in small personal injury cases to take the depositions of the doctors and facilities. These depositions are not taken for use in that case, but rather are part of a guerilla campaign of one-way discovery to prepare the eventual civil RICO case.

Once he gathers some deposition testimony and documents, Allstate's counsel will approach the providers to present an exorbitant settlement demand, typically in the seven-figures or more. If the providers balk, Allstate will then prepare and file a lengthy civil RICO complaint filled with innuendo, supposition, and immaterial allegations—again, like the complaint filed in this case. These cases rarely, if ever, proceed to trial, but instead serve to impose litigation costs on providers and sully their reputations.

This lawsuit is another operation in Allstate's campaign. Its complaint is filled with hundreds of paragraphs of immaterial allegations but contains no actual support for the causes of action pled. The complaint also reveals that

Allstate deposed Dr. Bhagat about the very allegations in the complaint more than two years before it was filed, yet Allstate claims in this court that it was deceived into paying hundreds of "inflated" settlements *after* it took Bhagat's deposition. It is an improper, baseless, and abusive lawsuit. It should be stopped here.

## ARGUMENT

> *"Where's the beef?"*
>
> - *Wendy's / Walter Mondale, 1984*

Like the burgers of Wendy's competitors or the presidential campaign of Gary Hart, Allstate's complaint is certainly not lacking in volume but is fatally deficient in substance. Much of the complaint is made up of immaterial allegations and innuendo plainly intended to smear the reputation of the defendants and obscure the lack of support for its own claims. This belies the true purpose of Allstate's complaint, which is to suppress Defendants' practice of medicine rather than vindicate any actual rights of Allstate's.

Allstate chooses to abuse RICO as its vehicle for this effort, as its past use of common-law fraud has been rejected as meritless. *See Allstate Ins. Co. v. Receivable Fin. Co., LLC*, 501 F.3d 398, 413–14 (5th Cir. 2007) (reversing a Texas-law fraud verdict and rendering a take-nothing judgment under a

similar fact-pattern). The purpose of RICO is "to eradicate the infiltration of legitimate business by organized crime." *Alexander v. United States*, 509 U.S. 544, 561 (1993). Nothing of the sort is alleged here. Federal courts have warned that the "murkiness of RICO's parameters coupled with its alluring remedies have led many plaintiffs to take garden variety business disputes and dress them up as elaborate racketeering schemes." *Uniroyal Goodrich Tire Co. v. Mutual Trading Corp.*, 63 F.3d 516, 522 (7th Cir. 1995). Allstate has done precisely that, dressing up its meritless fraud claim as a RICO case.

In its 75 pages (not counting the appendix) and 251 numbered paragraphs, Allstate's complaint fails to state sufficient facts stating a plausible claim for relief as required by *Twombly* and *Iqbal* and clearly fails to meet the heightened pleading standards of Rule 9(b) applicable to the fraud allegations underlying its claims. It is not until paragraph number 185 of 251 that Allstate finally gets around to alleging any false statements by Defendants, but these allegations are vague, threadbare, conclusory, and inadequate.

Moreover, Allstate's complaint shows that its claims are based on affidavits and bills submitted to them by adverse lawyers as part of arms-length negotiations to settle pending or threatened litigation of disputed, unliquidated tort claims. These facts negate the reliance and proximate cause

elements of Allstate's claims, show that Allstate' damages are inherently speculative, and plead Allstate's claims squarely within at least two doctrines providing immunity to defendants.

Moreover, the depositions referenced in Allstate's complaint negate causation. Those depositions were taken not by the defense attorneys in the personal injury cases, but by Allstate's lead counsel in this case, Mr. Weatherford. In Dr. Bhagat's deposition May 11, 2022, Mr. Weatherford asked about, and consequently demonstrated Allstate's knowledge of, the very facts Allstate now claims were concealed from it. Yet Allstate paid nearly half of the complained-of settlements—representing over $1.8 million of Allstate's claimed damages—<u>after</u> Mr. Weatherford questioned Dr. Bhagat. That there was no change in Allstate's settlement activity after these depositions demonstrates that the settlements were not "caused" by the concealment of any facts by Defendants.

For these reasons and more, Allstate has failed to state a claim on which relief can be granted. Allstate's claims must be dismissed.

## I.   STANDARD UNDER RULES (12)(B)(6) AND 9(B).

Under FED. R. CIV. 8(a)(2), "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." *Cevallos*

*v. Silva*, 541 Fed. Appx. 390, 392 (5th Cir. 2013). "To survive a Rule 12(b)(6) motion to dismiss, the factual allegations must be sufficient to state a claim for relief that is plausible on its face and to raise a right to relief above the speculative level." *Id.* (citing *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "The mere possibility of misconduct is not sufficient." *Id.*

Further, to survive a motion under FED. R. CIV. P. 12(b)(6), "the complaint must contain either direct allegations on every material point necessary to sustain recovery or contain allegations from which an inference may be fairly drawn that evidence will be introduced at trial" *Id.* (citing *Twombly*, at 555). To subject a complaint to dismissal, it is unnecessary for the Court to conclude that the allegations are "unrealistic." "nonsensical," or "fanciful." *Iqbal*, 556 U.S. at 681. Rather, "bare assertions" that are "conclusory" and "amount to nothing more than a 'formulaic recitation of the elements'" of a claim are "not entitled to be assumed true" and cannot support a claim for relief. *Id.*

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, at 679. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* (quoting FED. R. CIV. P. 8(a)(2)).

"In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." FED. R. CIV. P. 9(b).[3] "Rule 9(b) is an exception to Rule 8(a)'s simplified pleading[.]" *United States ex rel. Grubbs v. Kanneganti*, 565 F.3f 180, 185 (5th Cir. 2009). "In cases of fraud, Rule 9(b) has long played [a] screening function, standing as a gatekeeper to discovery, a tool to weed out meritless fraud claims sooner than later." *Id.* "We apply Rule 9(b) to fraud complaints with 'bite' and 'without apology,' but also aware that Rule 9(b) supplements but does not supplant Rule 8(a)'s notice pleading." *Id.* at 185–86.

"The frequently stated, judicially-created standard for a sufficient fraud complaint . . . instructs a plaintiff to plead 'the time, place and contents

of the false representation[], as well as the identity of the person making the misrepresentation and what that person obtained thereby.'" *Id.* ˌat 186. "Directly put, the who, what, when, and where must be laid out before access to the discovery process is granted." *Williams v. WMX Technologies, Inc.*, 112 F.3d 175, 178 (5th Cir. 1997). Rule "9(b) applies to . . . RICO claims resting on allegations of fraud," as well as state-law fraud claims. *Id.* at 177.

Dismissal under Rule 12(b)(6) based on an affirmative defense is appropriate where the defense appears on the face of the complaint. *Gines v. D.R. Horton, Inc.*, 699 F.2d 812, 916 (5th Cir. 2012).

## II.    ALLSTATE HAS FAILED TO STATE A CLAIM UNDER RICO.

Allstate has asserted RICO claims under § 1962(c) and (d), as well as state-law claims for fraud, civil conspiracy, unjust enrichment, and money had and received. The basic elements of a RICO claim under 18 U.S.C. § 1962(c) are: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity. *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). Additionally, "the plaintiff only has standing if, and can only recover to the extent that, he has been injured in his business or property by the conduct constituting the violation." *Id.* There are multiple additional, more specific elements of such a claim, discussed below. A § 1962(d) claim requires a showing that a conspiracy

16

to violate § 1962(c) (or other RICO subsections not alleged here). 18 U.S.C. § 1962(d). A recovery on a civil RICO claim requires a showing that the plaintiff was injured "by reason of" a RICO violation, 18 U.S.C. § 1964(c), which has been held to require a showing both of but-for cause and proximate cause. *Torres v. S.G.E. Management, L.L.C.*, 838 F.3d 629, 636 (5th Cir. 2016).

Allstate fails to adequately plead several of these elements, as explained below.

## A. ALLSTATE FAILS TO ADEQUATELY PLEAD THE MAIL FRAUD PREDICATE.

The only RICO predicate alleged is mail fraud under 18 U.S.C. § 1341, the elements of which are: "(1) a scheme to defraud; (2) use of the mails to execute that scheme; and (3) the specific intent to defraud." *United States v. Harms*, 442. F.3d 367, 372 (5th Cir. 2006). Mail fraud also requires proof "that the scheme to defraud involved a materially false statement." *Id.*

"A RICO claim asserting mail fraud as a predicate act must allege how each specific act of mail fraud actually furthered the fraudulent scheme, who caused what to be mailed when, and how the mailing furthered the fraudulent scheme." *Heden v. Hill*, 937 F. Supp. 1230, 1243 (S.D. Tex. 1996). "The mail fraud statute does not reach every business practice that fails to fulfill expectations, every breach of contract, or every breach of fiduciary duty." *Id.*

17

Also, the complaint must "inform each defendant of the nature of his alleged participation in the fraud." *DiVittorio v. Equidyne Extractive Ind., Inc.*, 822 F.2d 1242, 1247 (2nd Cir. 1987). "It is not enough for the plaintiff to attribute vaguely the alleged fraudulent activity to the 'defendants' collectively." *FMC Int'l A.G. v. ABB Lummus Glob., Inc.*, No. H-04-3896, 2006 U.S. Dist. LEXIS 5291, at *14 (S.D. Tex. 2006).

"Given the routine use of mail and wire communications in business operations, … 'RICO claims premised on mail or wire fraud must be particularly scrutinized because of the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it.'" *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 489 (2d Cir. 2014) (quoting *Efron v. Embassy Suites (Puerto Rico), Inc.*, 223 F.3d 12, 20 (1st Cir. 2000)).

Allstate's fraud allegations fall short of the Rule 9(b) standard described in the Fifth Circuit case law cited above. Nowhere in Allstate's 75-page complaint does it allege the time, place, or contents of any alleged misrepresentation by Defendants. While Allstate points to its appendix of demands sent by personal injury lawyers, Allstate never actually alleges any misrepresentations of fact made by any Defendant.

After more than 180 paragraphs and 55 pages of painstaking description of Defendants' alleged business practices, which includes not a single alleged false statement by anyone, Allstate's complaint makes a few vague, conclusory allegations of fraud that wholly fail to meet the Rule 9(b) standard:

- That Defendants provided medical "records to the law offices," and "understood the records falsely inflated the value of the patient's personal injury claim." ¶185. But nowhere in Allstate's detailed description of the records can one find any expression of fact or opinion as to the value of a personal injury claim, nor does Allstate identify any specific communication or tie it to any specific Defendant.

- That the "Memorial Heights records that were produced in the demand packages, including the reports and bills, made misrepresentations concerning the claimants..." ¶189. But Allstate never points to any specific record containing a misrepresentation, or state which Defendants made the misrepresentation.

- That Defendants misrepresented that the "claimant's presenting condition was of such high severity that comprehensive emergency medical examinations and evaluations were required, justifying billing CPT 99285 and 99284 emergency services." ¶189.a. But Allstate never alleges how the conditions were not sufficiently severe. Also, as described by Allstate, the records described the patients' conditions and the examination, so Allstate could not have been deceived as to the nature of the condition merely by the use of a CPT code.

- That Defendants represented "[h]igh level emergency room examinations and services were in fact provided as represented in the bills." ¶189.b. Again, Allstate never alleges that such examinations or services were not provided—in fact, they affirmatively allege that these services were performed. ¶198.c. And again, the records described the examinations and services provided, so Allstate could not have been deceived by the billing amounts.

- That Defendants misrepresented that "[o]rders for diagnostic testing such as x-rays and CTs were reasonable and necessary due to the patients' condition and evaluation," ¶189.c, and that "[e]mergency room facility and emergency room physician charges were reasonable." Not only is reasonableness and necessity inherently a matter of opinion, none of the records described by Defendants make such a representation. The only specifically alleged representations of reasonableness and necessity appear in TEX. CIV. PRAC. & REM. CODE § 18.001 affidavits—by their very nature the testimony of an adverse witness in a judicial proceeding. Also, Allstate never alleges that the testing was not actually reasonable or necessary.

- That Defendants' records failed to disclose that claimants were referred by an attorney. ¶190. Allstate alleges no basis by which any Defendant would owe a duty to disclose such information in a medical record. Allstate claims this amounts to a "mirepresent[ation] that the claimants were acting as prudent laypersons" seeking emergency care, but no representation as to the patients' motivations are made in any record described in the complaint.

- That Defendants "employ fraudulent billing practices, that greatly inflated the charges of the unnecessary evaluations, treatment, and diagnostic testing." ¶192. Allstate cites generally

125 paragraphs of its complaint to support this conclusory statement, but the referenced paragraphs allege no unnecessary services. Defendants also complain of a "dual chargemaster," but there is no explanation as to how that amounts to a false statement.

These allegations are anticlimactic after 55 pages of buildup. None of these statements identifies a specific, materially false statement of fact. Allstate makes no other attempted allegations of false or fraudulent statements.

In its 75-page complaint, Allstate does not point to a single, specific materially false statement, let alone lay out the "who, what, when, and where" required by Rule 9(b). Allstate fails entirely to identify any particular misrepresentation, who exactly made the representation, what the content of the misrepresentation was, when it was made, where it was made, how it was made, or how it was fraudulent. Allstate points in its appendix to numerous settlement demands made by nonparty lawyers but fails to show how any contained any material misrepresentation by any Defendant. The closest they come are the allegations discussed above, which either are statements of fact Allstate does not actually allege to be false or are statements of opinion.

"An actionable representation is one concerning a material fact; a pure expression of opinion will not support an action for fraud. In particular, an

expression of opinion about monetary value is not a representation of fact which gives rise to an action for fraud." *Westcap Enter. v. City Colleges of Chicago*, 230 F.3d 717, 726 (5th Cir. 2000) (quoting *Transp. Ins. Co. v. Faircloth*, 898 S.W.2d 269, 276 (Tex. 1995)). The value of an unliquidated claim, such as a personal injury claim, "is inherently a matter of opinion." *Faircloth*, at 277 (discussing wrongful death claims). The gist of Allstate's entire case is that Defendants' records "falsely inflated the value of the patient's personal injury claim," ¶185, but this would be a nonactionable opinion of monetary value even if Defendants had rendered it.

Moreover, Allstate has wholly failed to identify how any statement was material. Materiality of falsehood is an element of mail fraud. *Neder v. United States*, 527 U.S. 1, 25 (1999) (mail fraud). Here, Allstate does not allege that any particular misrepresentation, whether mailed or otherwise, was material or how it was material.

Because Allstate has failed to allege a material misrepresentation of fact, an essential element of the alleged mail fraud predicates, its RICO claims must be dismissed.

B. ALLSTATE HAS FAILED TO ALLEGE HOW ANY DEFENDANT "CAUSED" THE USE OF MAIL.

Additionally, with regard to the mail fraud predicates, Allstate has failed to allege how any defendant "caused" the use of the mail by the claimants' lawyers to further its allegedly fraudulent scheme. Every one of the mailings alleged by Allstate were demand letters sent by lawyers for the claimants— and most of the demands listed in Allstate's appendix were not mailed at all. The only other alleged mailings were settlement checks Allstate mailed to the lawyers.

Allstate does not allege that any defendant prepared, influenced, or even knew the content of any of the demands sent by any of these lawyers. Allstate does not allege any facts suggesting that any defendant even knew that a claimant's lawyer would use the mail to send a demand. Allstate certainly does not allege that any claimant's lawyer was under the control of any Defendant. Allstate cannot allege that any Defendant caused it to mail a settlement check. In fact, the only relationship alleged between any defendant and any lawyer is that the lawyers referred claimants to the emergency room and that the lawyers wrote letters of protection for the emergency room.

Because Allstate has failed to allege how any defendant "caused" the use of mail, it has failed to adequately state the mail fraud predicates of its RICO claims.

## C. ALLSTATE HAS FAILED TO SUFFICIENTLY ALLEGE ACTUAL RELIANCE ON ANY MISREPRESENTATION BY ANY DEFENDANT.

Courts in the Fifth Circuit hold "that Rule 9(b)'s particularity requirement extends to allegations of actual reliance." *Alameda Cnty. Employees' Ret. Assn. v. BP p.l.c. (In re BP p.l.c.)*, No. MDL No. 10-md-2185, 2013 U.S. Dist. LEXIS 171459, at *111 (S.D. Tex. 2013).[2] "Rule 9(b)'s particularity requirements are tied to the elements of fraud, specifically detrimental reliance; without sufficient detail regarding the alleged misrepresentation, no plaintiff could plausibly plead that he or she actually relied on it." *IAS Services Group, LLC v. Jim Buckley & Associates, Inc.*, 900 F.3d 640, 648 (5th Cir. 2018). To "surmount the hurdle of Rule 9(b)," Allstate "must 'describe . . . the circumstances of [its] reliance' with particularity.'" *BP* (citing *Sullivan v. Leor Energy LLC*, at *7).

As explained above, Allstate has not alleged "sufficient detail regarding" **any** "alleged misrepresentation," and thus, as the Fifth Circuit

---

[2] Citing *Sanchez v. Liggett & Myers, Inc.,* 187 F.3d 486, 491 (5th Cir. 1999); *In re Enron Corp. Securities, Deriv. & ERISA Litig.*, 540 F.Supp.2d 800, 830 (S.D. Tex. 2007); *Hernandez v. Ciba-Geigy Corp. USA,* 200 F.R.D. 285, 291 (S.D. Tex. 2001); *Sullivan v. Leor Energy LLC,* Civ. Act. No. H-05-3913, 2006 WL 2792909, at *7 (S.D. Tex. Sept. 27, 2006); *Steiner v. Southmark Corp.*, 734 F.Supp. 269, 275 (N.D. Tex. 1990); *Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. EP-11-CV-166, 2011 WL 5976918, at *4 (W.D. Tex. Nov. 29, 2011).

recognized, could not "plausibly plead" that it "actually relied on it." *IAS Services Group*, at 648.

Moreover, Allstate has not alleged that it relied on any misrepresentation made by any defendant. Allstate makes the conclusory assertion that it relied "on the settlement demand package documents," ¶211, but never states which "demand package documents" it relied on, or even that the documents on which it relied were generated by or contained a representation of any Defendant.

As Allstate admits, the demand packages, including the demand letters presumably containing the substance of the representation supporting the demands, were prepared by lawyers who were not under the control of or part of any defendant or either "enterprise." It is just as likely, based on Allstate's own allegations, that Allstate relied on representations by lawyers for whom no Defendant has any responsibility. This is not a plausible claim for relief satisfying *Twombly* or *Iqbal*, let alone the heightened requirements of Rule 9(b).

> D. ALLSTATE DOES NOT ALLEGE FACTS ESTABLISHING THAT THE NON-OWNER PHYSICIAN DEFENDANTS HAVE PARTICIPATED IN THE OPERATION OR MANAGEMENT OF EITHER ALLEGED RICO ENTERPRISE.

The Supreme Court has squarely held "that one is not liable under [§ 1962(c)] unless one has participated in the operation or management of the enterprise itself." *Reves v. Ernst & Young*, 507 U.S. 170, 183 (1993). "Although one need not be a ringleader, the Fifth Circuit has made clear that a defendant must have some supervisory involvement in an enterprise in order to satisfy § 1962(c)'s conduct or participate requirement." *Allstate Ins. Co. v. Benhamou*, 190 F. Supp. 3d 631, 655 (S.D. Tex. 2016) (citing *Allstate Inc. Co. v. Plambeck*, 802 F.3d 665, 675 (5th Cir. 2015)). "Thus, simply providing goods or services that ultimately benefit the enterprise will not subject one to liability." *Id.*

Allstate makes no allegation at all that Defendants Pedram Behzadi, M.D., Tarek Defrawi, M.D., Andrea Marconi, D.O., or Sara Reader, M.D. ever held any supervisory role with either alleged enterprise, let alone any allegation that satisfies *Twombly* and *Iqbal*. Allstate alleges only that these doctors "performed unnecessary emergency services." In other words, the doctors are alleged to have done more than "provid[e] .... Services that ultimately benefit the enterprise.."

At the very least, Allstate's claim against Drs. Behzadi, Defrawi, Marconi, and Reader must be dismissed.

26

E. ALLSTATE'S ALLEGED INJURY IS INHERENTLY SPECULATIVE.

The only injury claimed by Allstate is that it paid "inflated" bodily injury claims brought against its insureds by alleged patients of defendants. These claims are, by their nature, disputed and unliquidated and include noneconomic damages. All of the patients were allegedly represented by lawyers. Allstate does not allege that any of these patients were uninjured or that their claims were invalid. Allstate's damages are apparently the difference between the "inflated" settlements and the hypothetical non-inflated settlements it might have reached with the claimants but for defendants' alleged fraud.

Texas courts have squarely rejected claims of injury "based on an entirely hypothetical, speculative bargain that was never struck and would not have been consummated." *Formosa Plastics Corp. USA v. Presidio Engineers and Contractors, Inc.*, 960 S.W.2d 41, 50 (Tex. 1998). In *Formosa Plastics*, a contractor sued a property owner for fraudulently inducing the contractor to make a low bid for a construction project and was awarded $700,000 in damages: the difference between $600,000, the amount it bid, and $1.3 million, the amount is testified it would have bid had it known the trust. *Id.* at 48–49. The Texas Supreme Court held the evidence of the hypothetical bid to be

legally insufficient to support the damages award, because there "is no evidence that [contractor] would have been awarded the project if it had made a $1.3 million bid." *Id.*, at 50.

The Fourteenth Court of Appeals applied *Formosa Plastics* in affirming a no-evidence summary judgment against Allstate in a case involving allegations similar to those of the present case, holding that there was "no evidence that Allstate suffered actual legal injury through fraud."*Allstate Ins. Co. v. Rehab All. of Tex., Inc.*, No. 14-13-00459-CV, 2015 Tex. App. LEXIS 3973, at *23 (Tex. App.—Houston [14th Dist.] Apr. 21, 2015, pet. denied). As in the present case, Allstate's sued health care providers in *Rehab Alliance* claiming it was injured by overpaying personal injury settlements due to allegedly fraudulent bills and records included in settlement demand packages. *Id.* at *2–4.

However, there was no evidence that "the claims would not have been settled" but for the alleged fraud," or "as to how the exclusion of these charges would have impacted the viability of the settlements, or how, if at all, the exclusion of these charges would have impacted the total amount of each settlement." *Id.* at *19. Allstate argued that it would have offered the claimants nothing on the bills from the defendants, but this "theory assumes that had

Allstate offered the claimants less, the claimants would have accepted that lesser amount in settlement." *Id.* at *21–22. Its claim did "not account in any way for the amount Allstate would have actually *paid* on each claim under the scenario it poses." *Id.* at *22. "In the absence of evidence to support Allstate's contention of what it would have paid, there is no evidence that Allstate suffered an actual injury by not having had the opportunity to offer the claimants less." *Id.* "'Uncertainty as to the *fact* of legal damages is fatal to recovery[.]'" *Id.* at *20. (quoting *McKnight v. Hill & Hill Exterminators*, 689 S.W.2d 206, 207 (Tex. 1985)).

In the present case, Allstate has made no allegations showing the fact of a legal injury beyond speculation. Allstate seems to imply that it settled these claims for too much, but nowhere does it suggest an amount at which it should have or would have settled these claims but for Defendants' alleged misconduct. It does not describe what a non-"inflated" settlement would look like. Allstate does not even allege that it was possible for Allstate to settle these claims for less. It does not allege—nor could it plausibly allege—that the patients and their lawyers would have accepted less to settle their claims, or that it could have obtained a better result through litigation or trial (particularly when taking into account its own saved litigation costs.) Allstate

29

does not even allege that it would not have agreed to settle any one of these claims for the same amount but for Defendants' bills.

In short, based on Allstate's allegations, it is purely speculative whether Allstate has been injured at all by Defendants' alleged conduct. This is insufficient to "state a claim for relief that is plausible on its face and to raise a right to relief above the speculative level" as required under *Twombly/Iqbal*. *Cevallos v. Silva*, 541 Fed. Appx. at 392 (5th Cir. 2013).

Even if Allstate had alleged an injury based on its payment of personal injury settlements, such an injury is precisely the sort of speculative injury the Supreme Court rejected in *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 459 (2006). In *Anza*, the Court held that a RICO claim brought by a steel supply company against its competitors, who it alleged unfairly competed with through an alleged tax fraud scheme, failed because "the alleged violation" did not lead "directly to the plaintiff's injuries." *Id.* at 461. The Court held that the claims "could not satisfy" the requirement for "'some direct relation between the injury asserted and the injurious conduct alleged,'" under *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258 (1992). *Id.* at 457.

In its reasoning, the *Anza* Court looked to the speculative nature of the plaintiff's damages:

> Further illustrating this point is the speculative nature of the proceedings that would follow if Ideal were permitted to maintain its claim. A court considering the claim would need to begin by calculating the portion of National′s price drop attributable to the alleged pattern of racketeering activity. It next would have to calculate the portion of Ideal′s lost sales attributable to the relevant part of the price drop. The element of proximate causation recognized in Holmes is meant to prevent these types of intricate, uncertain inquiries from overrunning RICO litigation.

547 U.S. at 459–60.

Likewise, the speculative nature of Plaintiffs' damages illustrates the lack of directness of its alleged injury. How would a jury determine Plaintiffs' damages? It would have to determine the difference between the amount Allstate paid and the amount Allstate would have spent—both in paying the eventual settlement or judgment and in its litigation costs. The jury would need to answer questions such as: Would the plaintiff have accepted any offer Allstate would have made absent its "reliance" on Defendants' bills? Could the case have been settled without litigation? Would the plaintiff have filed a lawsuit? At what point, if any, could the case have been settled? Would the case have been tried? What would have been the likely outcome at trial? How would a jury value the claimant's noneconomic damages? What would

31

Plaintiffs' litigation costs have been? Could Allstate have faced exposure to an excess judgment under *Stowers*?

Plaintiffs' damages—the amount and whether it suffered an injury at all—is purely a matter of conjecture. Because Allstate has failed to allege a direct injury or to raise its claim for damages above the level of speculation, it has failed to state a claim.

### F. BECAUSE ALLSTATE HAS NOT PLEAD A 1962(C) CLAIM, IT CANNOT PLEAD A 1962(D) CLAIM.

As explained above, Allstate has failed to plead multiple elements of both its 1962(c) claim and its state-law fraud claim. As a result, it cannot plead either a RICO or a state-law conspiracy claim. "The failure to plead the requisite elements of either a § 1962(a) or a § 1962(c) violation implicitly means that [the defendant] cannot plead a conspiracy to violate either section." *Nolen v. Nucentrix Broadband Networks Inc.*, 293 F.3d 926, 930 (5th Cir. 2002). Thus, Allstate's RICO claims must be dismissed.

### III.  ALLSTATE HAS PLED ITSELF OUT OF COURT.

Not only has Allstate failed to allege sufficient facts to state a claim; it has also alleged facts that affirmatively defeat its claims.

### A. ALLSTATE'S CLAIMS ARE BARRED BY THE JUDICIAL PROCEEDINGS PRIVILEGE AND THE WITNESS IMMUNITY DOCTRINE.

Allstate's claims are based entirely on its settlement of disputed, unliquidated third-party tort claims that were the subject of anticipated or pending litigation. As explained above, to the extent Allstate alleges it relied on any statements by any defendant, those statements were either bills and records presented by adverse lawyers as evidence supporting a settlement demand or were affidavits actually filed in pending lawsuits.[14] Because Allstate's claims are based on defendants' alleged participation as witnesses in pending or contemplated litigation, they fall squarely within the judicial proceedings privilege and the witness immunity doctrines, and are barred by defendants' absolute immunity under those doctrines.

As the Supreme Court has recognized, "the common law provided absolute immunity from subsequent damages liability for all persons— governmental or otherwise—who were integral parts of the judicial process," including "private witnesses." *Briscoe v. LaHue*, 460 U.S. 325, 335 (1983). This immunity applies even if the witness has committed perjury. *Id.*, at 345. Whether called "witness immunity" or "witness litigation privilege, the Fourth Circuit recently explained that this "vital protection afforded all participants in litigation is unwavering." *Day v. Johns Hopkins Health System Corp.*, 907 F.3d 766, 771 (4th Cir. 2018).

> The Witness Litigation Privilege is a broad one. It applies to those who come forward of their own volition as well as those who are compelled, to those who provide factual testimony as well as those who provide opinions, to those who appear before administrative tribunals as well as those who appear in court, and to those who act with malice or ill will as well as those who are simply mistaken in their recollections.

*Id.*, at 771–72. Holding RICO and witness immunity to be "complementary," the Fourth Circuit applied witness immunity to bar a RICO claim based on the defendants' testimony as an expert witness in a black lung case. *Id.*, at 778.

Every circuit that has considered this issue has recognized witness immunity extends to affidavits, not just live testimony. *Pittman v. Cuyahoga County Dept. of Children and Family Svcs.*, 640 F.3d 716, 725 (6th Cir. 2011); *Thomason v. SCAN Volunteer Svcs., Inc.*, 85 F.3d 1365, 1373 (8th Cir. 1996); *Burns v. County of King*, 883 F.2d 819, 823 (9th Cir. 1989); *Sykes v. James*, 13 3d 515, 521 (2d Cir. 1993); *Giffin v. Summerlin*, 78 F.3d 1227, 1231 (7th Cir. 1996). Texas courts have also recognized this immunity. *McIntyre v. Wilson*, 50 S.W.3d 674, 682 (Tex. App.—Dallas 2001, pet. denied) (citing *Briscoe*). Additionally, Texas law has also recognized an overlapping, but distinct immunity extending to all statements made in connection with existing or

contemplated judicial proceedings. "In Texas, an absolute privilege has routinely been extended to judicial proceedings, meaning that any statement made in the trial of any case, by anyone, cannot constitute the basis for a defamation action, **or any other action**." *Hernandez v. Hayes*, 932 S.W.2d 648, 650 (Tex. App.—San Antonio 1996, writ denied) (citing *Reagan v. Guardian Life Ins. Co.*, 166 S.W.2d 909, 912 (Tex. 1942); *James v. Brown*, 637 S.W.2d 914, 916 (Tex. 1982)). "An absolutely privileged communication is one for which no remedy exists in a civil action. Where there is an absolute privilege, no action in damages for language, oral or written, will lie, 'and this is true even though the language is false and uttered or published with express malice.'" *Id.* "In this respect, an absolute privilege is tantamount to immunity." *Id.*

This absolute privilege "also extends to pre-trial proceedings, including affidavits filed with the court." *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994). It further extends to communications made "before judicial proceedings have begun" where the proceeding is "actually contemplated" or "seriously considered," even if "a formal proceeding does not eventually occur." *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 655 (Tex. 2015).

Here, Allstate's allegations make clear that Defendants' alleged misrepresentations were made in the context of existing or contemplated litigation. As stated above, its chief complaint is that Defendants overstated the amount of their reasonable and necessary charges, but the only alleged representation that Defendants' charges were reasonable and necessary were made in TEX. CIV. PRAC. & REM. CODE § 18.001 affidavits—a document whose only purpose is to establish this fact in a judicial proceeding.

Most importantly, the documents on which Allstate alleges it relied were "demand packets" submitted by personal injury lawyers, which allegedly included as supporting evidence records, bills, and/or affidavits supplied by some Defendants. These are inherently documents submitted in anticipation or in "contemplation" of litigation.

Allstate's claims against Defendants arise from their statements made as actual or potential witnesses in pending or potential lawsuits. Because Defendants are immune from liability for these statements under the judicial proceedings privilege and witness immunity doctrines recognized under both Texas and federal law, Allstate's claims against them must be dismissed.

### B. JUSTIFIABLE RELIANCE AND PROXIMATE CAUSE ARE FORECLOSED BY ALLSTATE'S OWN ALLEGATIONS.

Justifiable reliance is an essential element of Allstate's state-law fraud claim (and thus also its conspiracy and unjust enrichment claims predicated on fraud). *Formosa Plastics Corp. v. Presidio Engineers & Contractors, Inc.*, 960 S.W.2d at 41. Under Texas law, "[g]enerally, reliance on representations made in a business or commercial transaction is not justified when the representation takes place in an adversarial context, such as litigation." *Ortiz v. Collins*, 203 S.W.3d 414, 422 (Tex. App.—Houston [14th Dist.] 2006, no pet.). "'A party to an arm's length transaction must exercise ordinary care and reasonable diligence for the protection of his own interests, and a failure to do so is not excused by mere confidence in the honesty and integrity of the other party.'" *Id.* Representations made in the negotiation of a personal injury claim between an insurer and a claimant, even when the parties are not in litigation, are "made in an adversarial context" and reliance on them is generally unjustified. *Davis v. Texas Farm Burau Ins.*, 470 S.W.3d 97, 109 (Tex. App.— Houston [1st Dist.] 2015, no pet.).

Here, the only representations on which Allstate even comes close to alleging it relied are settlement demands presented by lawyers for third-party tort claimants against Allstate's insureds, and the documents supporting those demands. These are presented by opposing lawyers as part of an arms-length

negotiation to settle unliquidated, disputed tort claims. No context could be more adversarial. Allstate does not and cannot plausibly allege that it—a uniquely experienced and sophisticated actor when it comes to auto accident claims, with nearly limitless resources to investigate such claims—justifiably relied on any such statements, and it certainly makes no allegations that meet the plausibility requirements of *Twombly/Iqbal* or the particularity requirements of Rule 9(b). The justifiable reliance element of Allstate's state-law claims is negated by its own pleadings, and those claims must therefore be dismissed.

Additionally, Allstate's allegations negate the proximate cause element of its RICO claims. The Supreme Court has held that detrimental reliance is not an element of a RICO claim predicated on mail fraud, but, in the same case, it recognized that "none of this is to say that a RICO plaintiff who alleges injury 'by reason of a pattern of mail fraud can prevail without showing that *someone* relied on the defendant's misrepresentations." *Bridge v. Phoenix Bond & Indemnity Co.*, 553 U.S. 639, 658 (2008). "In most cases, the plaintiff will not be able to establish even but for causation if no one relied on the misrepresentation." *Id.* Here, Allstate has alleged no theory of causation other

than its conclusory allegations that it issued settlement checks in "reliance" on the settlement demand packages.

Thus, reliance is certainly an element of Allstate's RICO claims as they are pled. That reliance is, likewise, negated by Allstate's allegations showing that any representations were made by opposing lawyers in a plainly adversarial context. Regardless of whether Allstate must show that such reliance was justifiable or reasonable, Allstate has not shown that such reliance is even *plausible* to any experienced observer. *See Iqbal*, at 679. ("Determining whether a complaint states a plausible claim for relief will . . .be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.").

Because the adversarial context of any representations negate any possibility of a plausible showing of actual or justifiable reliance on those representations by a party like Allstate, its claims must be dismissed.

### C. THE 2022 DEPOSITIONS REFERENCED IN THE COMPLAINT NEGATE CAUSATION AND RELIANCE.

In support of its claim, Allstate references and quotes several 2022 depositions of Defendants throughout its complaint—apparently in violation of several state court protective orders. However, the timing and content of

these depositions actually serve to negate the causation and reliance elements of Allstate's claims.

Allstate repeatedly references a 2022 deposition of Dr. Bhagat in their complaint and discusses her testimony. Dkt. 1, at ¶¶6, 60, 69–70. Excerpts from that deposition are attached to this motion as Exhibit 1.[3]

The deposition was taken May 11, 2022 in *Gonzales v. Allstate Fire and Casualty Insurance Company*, No. 2020-84057, in the 157th District Court, Harris County, Texas. Ex. 1, at 1. Even though it was taken in an ordinary uninsured or underinsured motorist coverage case, Allstate's lead counsel in this case, Mr. Weatherford, appeared and took the deposition for Allstate. Ex. 1, at 2.

Mr. Weatherford's questions—asked on behalf of Allstate—make clear that Allstate was aware of several of the facts it now claims were concealed from it at least as early as May 2022:

- "Was there ever a time when there was a separate Chargemaster for … the letter of protection patients treating under the MVA Facility entity?" 89:9–10.

---

[3] "At the 12(b)(6) stage, the court may consider the complaint in its entirety, including documents incorporated into the complaint by reference." *Petrobras Am., Inc. v. Samsung Heavy Indus. Co.*, 9 F.4th 247, 252 n.2 (5th Cir. 2021).

- Extensive questioning about the difference between the amounts on the plaintiff's bill and the amounts in the chargemaster. 90:21–101:10.

- "[Emergency Healthcare Partners, LP is] the only entity that's actually licensed by the State of Texas as a freestanding ER. Is that correct?" 117:13–15.

- "[The MVA Entities are] strictly billing entities?" 117:21.

- "[You] entered into letters of protection with at least 17 different personal injury attorneys. …. Did you form the MVA entity -- entities after coming to agreements with certain personal injury attorneys to refer patients?" 120:17–24.

- "[The plaintiff] lives 18.4 miles away from Memorial Heights Medical Center. Would oyou consider that a … substantial distance"? 39:4–7.

- "So this was five days after the accident that she came to the freestanding emergency room?" 36:4–5.

In light of these questions—and the very fact that Mr. Weatherford was taking the deposition in the first place—it is impossible that Allstate was deceived by any bills or records issued by Defendants after May 11, 2022. Yet its own appendix makes clear that never stopped paying settlements that included Defendants' bills. Appendix A to the complaint lists 635 settlements that Allstate claims were "inflated" due to its reliance on Defendants' bills, ranging in time from 2019 to ***January 2024, nearly two years*** after Mr.

41

Weatherford parachuted into the Gonzalez case to depose Dr. Bhagat.[4] *At least 300* of those settlements, *nearly half*, were mailed *after May 11, 2022*. Of these 300+ late settlements, Allstate attributes at least $1.866 million, nearly 40% of its claimed damages, to Defendants.

As discussed above, some form of reliance is an element of all of Allstate's claims. Allstate cannot seriously, or plausibly, come into this Court now and claim it continued to be deceived by Defendants two years after it began preparing this lawsuit by having Mr. Weatherford take Defendants' depositions in other cases. Because the depositions and Allstate's continued settlement conduct negate reliance and causation, this case should be dismissed.

## IV. ALLSTATE HAS STATED NO STATE LAW CLAIMS OVER WHICH THIS COURT SHOULD EXERCISE JURISDICTION.

As explained below, after dismissing Allstate's federal claims for failure to state a claim, the Court should either: (1) decline to exercise supplemental jurisdiction over Allstate's state law claims and dismiss them, or (2) dismiss them for failure to state a claim.

---

[4] *See* Dkt. 1-2, Appendix A, at 14, line 478.

A. THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION.

If the Court dismisses Plaintiffs' RICO claims, it should decline to exercise supplemental jurisdiction under § 1367 and dismiss Plaintiffs' remaining, state-law claims. The statutory factors governing this analysis are whether: (1) "the claim raises a novel or complex issue of State law," (2) "the [state] claim substantially predominates over the" federal claim, (3) "the district court has dismissed all claims over which it has original jurisdiction," or (4) "in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. 1367(c).

Here, the factors clearly weigh in favor of dismissal of the state law claims, and the Court should dismiss the state law claims. Allstate's state-law claims invoke issues of justifiable reliance and judicial proceedings privilege that should be addressed by Texas courts, as well as the issue of whether Texas law should recognize any cause of action by a liability insurer for fraudulent inducement of a settlement. Allstate's RICO claims are actually dressed-up state-law fraud claims, and thus the state claims substantially predominate. Once the Court dismisses the RICO claims, it should decline to exercise jurisdiction over the state law claims.

B. ALLSTATE HAS FAILED TO STATE A CLAIM FOR STATE-LAW FRAUD.

"It is well-established in Texas that a party claiming fraud must prove: (1) a material representation was made; (2) the representation was false; (3) the speaker made the representation knowing that it was false or made it recklessly without any knowledge of its truth and as a positive assertion; (4) the speaker made the representation with the intent that it be relied upon by the party; (5) the party acted in reliance on the misrepresentation; and (6) the party thereby suffered injury." *In re Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994).

As explained in detail above, Allstate has failed to sufficiently allege any material misrepresentations by any Defendant or that it actually relied on any such misrepresentations. Moreover, its justifiable reliance is negated under the *Rehab Alliance* case discussed above. Allstate's state law fraud claim must be dismissed.

### C. ALLSTATE HAS FAILED TO STATE A CLAIM FOR CIVIL CONSPIRACY.

Civil conspiracy is not an independent cause of action under Texas law, but instead, "a defendant's liability for conspiracy depends on participation in some underlying tort for which the plaintiff seeks to hold at least one of the named defendants liable." *Tilton v. Marshall*, 925 S.W.2d 672, 681 (Tex. 1996). As stated above, Plaintiff has failed to state a claim for fraud, the only

state law tort alleged. Accordingly, Plaintiff has also failed to state a claim for civil conspiracy.

### D. ALLSTATE HAS FAILED TO STATE A CLAIM FOR MONEY HAD AND RECEIVED.

To maintain a claim for money had and received under Texas law, Allstate must establish that Defendants hold money which "'in equity and good conscience belong[s] to'" Allstate. *Bank of Saipan v. CNG Fin. Corp.*, 380 F.3d 836, 840 (5th Cir. 2004). "'Money had and received is an equitable doctrine applied to prevent unjust enrichment.'" *Id.* While a plaintiff "need not show that the defendant acquired the money through fraud or duress," the plaintiff must show "a lack of good faith in the acceptance of the stolen or pilfered funds." *Id.* at 843.

Here, Allstate alleges no facts showing that Defendants have ever received any money belonging to Allstate, let alone that Defendants received such money in bad faith. Allstate's allegations show only that some Defendants may have been paid for services they rendered to their patients. Allstate claims it "conferred a benefit upon Defendants by paying sums to settle the claims at issue," but Allstate paid the patients and their lawyers, not Defendants.

Even if Allstate had sufficiently alleged that Defendants had received part of the settlement proceeds, Allstate has not shown why the money "in good conscience" belongs to Allstate. Allstate paid the money to settle disputed personal injury claims in exchange for a release, and Defendants allegedly received money for services they actually provided to their patients. If Allstate were permitted to recover some of that money while retaining the benefit of the release, it would be Allstate who was unjustly enriched.

Allstate also alleges that "the MVA Entity Defendants … should not have billed" for the services they provided because they "operated as an unlicensed Freestanding Emergency Medical Care facility." ¶243. But Allstate's own allegations establish that the patients received care on the premises of Memorial Heights Emergency Center—which is a licensed FEMC—from doctors affiliated with that facility. Allstate points to no reason why an FEMC cannot bill for its services through another entity.

More importantly, Allstate does not show why it—the liability insurer of tortfeasors who injured the patients—would have any standing to complain of any Defendant's licensure, or that a private cause of action even exists for such a violation. Under Texas law, the "bar for implying a private cause of action" from a constitutional or statutory provision "is high." *Tex. Med. Res.,*

*LLP v. Molina Healthcare of Tex., Inc.*, 659 S.W.3d 424, 431 (Tex. 2023). The "controlling legal standard" under Texas law is "the existence of a private cause of action must be clearly implied in the statutory text." *Id.* at 431 (citing *Brown v. de la Cruz*, 156 S.W.3d 560, 563 (Tex. 2004)). There is nothing in the FEMC licensure statute, Chapter 254 of the Texas Health & Safety Code, suggesting that its violation gives rise to a private cause of action. 

Allstate has failed to state a claim for money had and received.

E. ALLSTATE HAS FAILED TO STATE A CLAIM FOR UNJUST ENRICHMENT.

Under Texas law, a "party may recover under the unjust enrichment theory when one person has obtained a benefit from another by fraud, duress, or the taking of an undue advantage." *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992).

Allstate's unjust enrichment claim is based explicitly on its inadequately-alleged claim of fraud and its invalid claim that the bills were for unlicensed FEMC services. As explained above, Allstate has failed to adequately allege fraud under Rule 9(b), and there is no private cause of action for violation of the Texas FEMC licensure statute.

Moreover, Allstate's payment, and any Defendant's receipt, of funds were governed by express contracts identified in the complaint: Allstate's

settlement agreements with the patients, and Defendants' letters of protection from the patients' lawyers. "When a valid agreement already addresses the matter, recovery under an equitable theory is generally inconsistent with the express agreement." *Fortune Prod. Co. v. Conoco, Inc.*, 52 S.W.3d 671, 684 (Tex. 2000). Any recovery by Allstate of the funds it paid in settlement should be governed by the terms of its settlement agreements with the claimants to whom the funds were paid

Allstate has failed to state a claim for unjust enrichment.

## V.    CONCLUSION AND PRAYER

As explained above, Allstate has failed to state several elements of the mail fraud predicate of its civil RICO claims under the Rule 9(b) standard. It has also failed to allege that several of the defendants, Drs. Behzadi, Defrawi, Marconi, and Reader, had any supervisory role in the conduct of any RICO enterprise. It has pled itself out of court by showing that any representations by Defendants on which it could have relied were made in the course of the adversarial negotiation of disputed personal injury claims that were the subject of actual or threatened litigation, and Defendants' roles in that litigation were those of actual or potential witnesses. The depositions referenced in its complaint, taken more than two years before the complaint was file,

conclusively forecloses any reliance or causation. Finally, to the extent the Court exercises supplemental jurisdiction over Allstate's state law claims, Allstate has failed to adequately allege any of them.

For these reasons, Defendants respectfully request that Plaintiffs' claims be dismissed with prejudice.

DATED: September 20, 2024.

Respectfully Submitted,

<table>
<tr><td>SORRELS LAW</td><td>HUMPHREY LAW PLLC</td></tr>
<tr><td><br>**Randall O. Sorrels**<br>Texas Bar No. 10000000<br>5300 Memorial Drive<br>Suite 270<br>Houston, Texas 77007<br>eservice@sorrelslaw.com<br>Telephone: 713-496-1100<br>Facsimile: 713-238-9500<br>***Attorney in Charge for the MEHC Defendants*[5]**</td><td>*/s/ Brian S. Humphrey II*<br>**Brian S. Humphrey II**<br>Texas Bar No. 24074456<br>700 Louisiana, Suite 3950<br>Houston, Texas 77002<br>brian@humphreylawpllc.com<br>Telephone: 713-364-2616<br>Facsimile: 832-827-3299<br>***Co-Counsel for the MEHC Defendants***</td></tr>
</table>

---

[5] Akash Bhagat, D.O.; Emergency Healthcare Partners, L.P. (d/b/a Memorial Heights Emergency Room, d/b/a Memorial Heights Emergency Center); Memorial Heights Emergency Center MVA Facility Administration, LLC (d/b/a/ Memorial Heights MVA – Facility); Memorial Heights Emergency Center MVA Professional Administration, LLC (d/b/a Memorial Heights MVA – Physician); Bhagat Investments, Inc.; Ruben Veloz, M.D.; Pedram Behzadi, M.D.; Tarek Defrawi, M.D.; Andrea Marconi, D.O.; Sara Reader, M.D.; Jason Masvero, R.N.; and Leia England.

STACY & BAKER, P.C.

**Brian A. Baker**
Texas Bar No. 24082648
5300 Memorial Drive
Suite 890
Houston, Texas 77007
brian.baker@stacybakerlaw.com
Telephone: 713-527-9991
Facsimile: 713-527-9992
*Co-Counsel for the MEHC*
*Defendants*

DWAYNE R. DAY, P.C.

**Dwayne R. Day**
Texas Bar No. 00795314
3401 Allen Parkway, Suite 101
Houston, Texas 77019
dday@ddaylaw.com
Telephone: 713-818-1534
Facsimile: 832-565-9011
*Attorney in Charge for Defendants*
*Elizabeth Fair, M.D.*
*and Southern Emergency Physicians*
*Ltd LLP*

## CERTIFICATE OF SERVICE

I hereby certify that this document was served on all attorneys of record in accordance with local rules by electronic filing service on September 20, 2024.

/s/ Brian S. Humphrey II
Brian S. Humphrey II