United States District Court
Southern District of Texas

**ENTERED**

December 27, 2024

Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| ALLSTATE INDEMNITY COMPANY, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:24-CV-02573 |
| | § | |
| AKASH BHAGAT, *et al.*, | § | |
| | § | |
| Defendants. | § | |
| | § | |

## MEMORANDUM AND ORDER

## I.    INTRODUCTION SUMMARY

Before the Court is the defendants' motion to dismiss, the plaintiff's complaint [DE 14], and the plaintiffs' response [DE 27]. After a careful review of the defendants' motion, the plaintiffs' complaint and attached Appendix [DE 1], and the plaintiffs' response the Court determines that the defendants' motion to dismiss is meritorious and should be granted.

The defendants' motion to dismiss, based on FRCP 12(b)(6) and 9(B), is directed against the plaintiffs' complaint that asserts that the defendants engaged in fraudulent conduct while treating certain patients in violation of the Racketeer Influenced and Corrupt Organization Act ("RICO"), RICO and common law conspiracy and claims based on state law fraud. The defendants[1] are individuals and entities consisting of physicians, including Doctor Akash Bhagat, other medical personnel, a medical emergency center ("Center") and a limited liability

---

[1] The defendants are:  Akash Bhagat, D.O.; Emergency Healthcare Partners, L.P. (d/b/a Memorial Heights Emergency Room, d/b/a Memorial Heights Emergency Center); Memorial Heights Emergency Center MVA Facility Administration, LLC (d/b/a/ Memorial Heights MVA – Facility); Memorial Heights Emergency Center MVA Professional Administration, LLC (d/b/a Memorial Heights MVA – Physician); Bhagat Investments, Inc.; Ruben Veloz, M.D.; Pedram Behzadi, M.D.; Tarek Defrawi, M.D.; Andrea Marconi, D.O.; Sara Reader, M.D.; Jason Masvero, R.N.; and Leia England.

corporations associated with the Center.   The plaintiffs[2] are insurance companies that are subsidiaries or affiliates of Allstate Insurance Corporation.

The plaintiffs assert that the defendants overbilled and engaged in unnecessary medical treatment and billings regarding certain patients.   The specific patients of interest were involved in automobile accidents with the plaintiffs' insureds.   The plaintiffs seek to recover certain funds that were paid in settlements to the attorneys representing the treated patients.   With this summary of the plaintiffs' lawsuit, the Court addresses the defendants' motion to dismiss, in the light of the plaintiffs', pleadings and attachment[3], and the supporting and opposing briefs.

## II.    THE PLAINTIFFS' PLEADINGS AND CONTENTIONS

In support of its conspiracy, fraud and tort claims, the plaintiffs assert that defendant, Memorial Heights Emergency Center ("MHEC"), began operating as an Emergency Center, in 2008.   At some time in or around 2018, the plaintiffs assert the physicians and medical personnel began operating a RICO Enterprise engaging in an unlawful and fraudulent medical practice by providing unnecessary medical treatment to certain patients and issuing false or fraudulent medical reports and billings pertaining to them.

To facilitate the RICO scheme, the plaintiffs assert that around 2018, Doctor Bhagat formed two new MHEC entities: MHEC-MVA Facility Administration, LLC [MHEC-FA] and MHEC-MVA Professional Administration, LLC [MHEC-PA].   The plaintiffs also assert that Dr. Bhagat formed Bhagat Investments, Inc., where he invests his ill-gotten gains.

The plaintiffs assert that these new entities, in conjunction with the physicians and related medical personnel performed emergency medical procedures that the physicians and the corporate

[2]Plaintiffs are Allstate Indemnity Company, Allstate Property & Casualty Insurance Company, Allstate County Mutual Insurance Company, and Allstate Fire & Casualty Insurance Company.
[3] The plaintiffs present a 75-page complaint accompanied by an 18-page Appendix.   The length of the pleadings do not add substance to the allegations, but tends to repeat itself in various sections of the complaint.

entities were not legally authorized or licensed to perform under Texas law. Under the MHEC new configuration, MHEC permitted the physicians and related entities to accept innumerable referrals from attorneys who steered their clients to the Center even though the referrals did not require emergency medical treatment. The attorneys, in turn, forwarded "letters of protection" to assure the physicians that the patients' medical bills would be paid.

The plaintiffs admit, however, that MHEC was licensed in 2008 as a "freestanding emergency medical care facility" and does not dispute that the facility is still licensed to engage in emergency medical care. Nevertheless, the plaintiffs assert, MHEC's new configuration makes the entire operation, a RICO Enterprise. The plaintiffs' point out that because MHEC is a licensed Emergency Center, it is permitted to use emergency billing codes for emergency medical treatments; however, the related entities are not. Moreso, the patients did not need emergency level treatment. Hence, the failure of MHEC to distinguish between routine examinations and emergency care constitutes the RICO violation. Therefore, MHEC, its related entities and the physicians, are engaged in a scheme to cheat the plaintiffs by their fraudulent conduct in violation of MHEC's state license and both state and federal law. As a result, the plaintiffs seek to recover as damages all funds received by the defendants based on the defendants' medical billings. *See* [Appendix to the plaintiff's complaint]. The defendants take exception to the plaintiffs' lawsuit and seek dismissal pursuant to Federal Rules of Civil Procedure, Rules 9(b) and 12(b)(6).

## III.    THE DEFENDANT'S MOTION AND CONTENTIONS

In response to the plaintiffs' lawsuit, the defendants argue that the plaintiffs' pleading, in their best light, fail to assert a specific, materially false statement made by any physician or entity. They also argue that the plaintiffs have failed to link any false representation to any specific individual defendant and identify that made the alleged false statement. Relying on the strictures

of FRCP 9(b), the defendants assert that the plaintiffs have failed to state when any false statement was made, where the statement was made, and the content of any statement. Therefore, the defendants assert, the plaintiffs cannot satisfy the pleading strictures of Rule 9(b)[4] relative to their fraud allegations.

Concerning the conspiracy, fraud and mail fraud claims, the defendants argue that the plaintiffs have: failed to allege how the defendants conspired to use the mail in a fraudulent manner; failed to assert facts evincing actual reliance on the part of the plaintiffs in the use of the mailed materials; failed to plead how any non-owner of the clinics participated in the operations and/or management of the alleged RICO Enterprise as a co-conspirator; and failed to plead how and to what extent the plaintiffs have been damaged.

In regard to damages and causality (proximate cause), the defendants argue that the plaintiffs have not factually illustrated the directness necessary to connect the physicians' conduct with any fraudulent. Nor do the pleadings connect the alleged fraudulent medical treatment provided and the damages the plaintiffs allege. With regard to Dr. Bhagat, in particular, the defendants argue that he is immune from prosecution under the doctrine of "witness-immunity" and under the "judicial proceedings privilege". The plaintiffs respond that the defendants' claim of immunity does not carry over to fraudulent conduct, particularly conduct committed after any statement or testimony was given[5]. Concerning the issue of damages, the plaintiffs reassert that their damages are not speculative, but are specifically illustrated in the Appendix[6] to their complaint.

---

[4] Rule 9(b) addresses pleading as it relates specifically to fraud claims. A claim based in fraud requires: ". . . [a] party [to] state with particularity the circumstances constituting fraud or mistake."

[5] The Court will not address the immunity defenses in light of the Court's disposition of the defendants' motion to dismiss on other grounds.

[6] The Appendix attached to the plaintiffs' complaint lists 635 claimants by initials who were involved in automobile accidents with the plaintiff' insureds. The chart sets out the date of loss, the Allstate company involved, the date of

## IV.    LAW APPLICABLE TO MOTION TO DISMISS

The Federal Rules of Civil Procedure, Rule 8(a)(2) provides that . . . "a pleading must contain a short and plain statement of the claim showing that the pleader is entitled to relief." However, case law addressing a motion to dismiss based on FRCP 9(b) and 12(b)(6) determines entitlement to relief from a "plausibility" perspective. And, while it does not necessarily override Rule 8's pleadings leniency, it does illuminate the responsibility of courts as "gatekeepers" to ferret out frivolous or non-conforming pleadings. Hence, a court is duty bound to determine the sufficiency of pleadings and whether a lawsuit should proceed in the absence of factual or legal sufficiency.

The Supreme Court's language in *Twombly* instructs accordingly. *Bell A. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To survive a motion to dismiss, the factual allegations must be sufficiently factual to state a claim for relief that is "plausible on its face" and, thereby, raise a right to relief above speculation. *Id.* In this inquiry, and in relation to the elements of each claim, conclusory allegations and speculations will not sustain a pleading. *See Jones v. Greniger,* 188 F.3d 322, 324 (5th Cir. 1999).

Similarly, when a court addresses a Rule 9(b) motion to dismiss, claims or allegations of fraud dictate a similar gate keeping role. Rule 9(b) places on a complainant the duty to support a fraud claim with sufficient specificity that the circumstances constituting the alleged fraudulent conduct are plainly stated. *Id.* Hence, a simplified pleading under Rule 8(a), does not carry the day because fraud is a specific tort that requires proof of moral turpitude. *See Grubbs v.*

---

MHEC's medical survey or care the claimant's attorney, date of demand by the attorney, the settlement amount, the date the settlement was mailed and the medical fees attributed to MHEC or MH.

*Kanneganti*, 565 F.3d 180, 185-86 (5th Cir. 2009).  Within these parameters, the Court addresses

the defendants' motion.

## V.    REVIEW OF THE PLAINTIFFS' PLEADINGS

After a careful review of the plaintiffs' extensive complaint, the Court concludes that:

A.    the plaintiffs have failed to plead any specific factual statement(s) or misrepresentation made by any of the defendants;

B.    there are no medical statements providing misrepresentations of fact and the name of the person who prepared or authored any record;

C.    the plaintiffs' pleadings fail to show the medical condition of each of the 635 patients, how that condition fails to merit the medical treatment and/or examinations performed; what each patient stated or described as his or her condition to a physician or the attending medical personnel; and, whether the complaint(s) made by the patient justified the billing codes used;

D.    the examinations and other medical services allegedly provided to each of the 635 patient was, in fact, not provided;

E.    the charges for the testing and diagnostic evaluations were unreasonable or within the charges that other emergency care facilities charge;

F.    the measures of damages that Texas law recognizes for common-law fraud are out-of-pocket and benefit-of-the bargain expenses.  *See LHC Nashia Partnership, Ltd. v. PDNED Sagamore Nashua, L.L.C.,* 659 F.3d 450, 462 (5th Cir. 2011).  However, the plaintiffs have not pled facts that support either of these remedies; and,

G.    there are no pleadings of a direct injury, or how the claims for damages are connected to or established by the proximate cause required to prove fraud.

## VI.    ANALYSIS AND DISCUSSION

Fraud is the underlying claim that undergirds the entirety of the plaintiffs' lawsuit.

Therefore, instead of discussing each claim, the Court will address the legal consequences of the

plaintiffs' indefensible complaint in light of the disconnect between the facts pled and the legal

standards necessary to advance the plaintiffs' lawsuit to trial.

In order to maintain its fraud claims, the plaintiffs must assert that the defendants made a material representation in the medical records of each of the 635 patients, specifically pointing out the false statement(s) or misrepresentations.  Next, the plaintiffs must plead that the representation(s) was false, the representation was made by one of the defendants with knowledge of the falsity of the representation when it was made, or, that it was made with reckless disregard for the truth, with the specific intent that the plaintiffs would rely on the representation, and that the plaintiffs did, in fact, rely on the representation to their detriment.  *Tilton v.* Marshall, 925 S.W.2d 672, 684 (Tex. 1996).[7]  Likewise, a recovery by the plaintiffs on their several claims for RICO and common law conspiracy; money had and received, and unjust enrichment, rest on whether the plaintiffs have "plausibly" pled a cause of action for fraud and can establish that they suffered multiple injuries as a "direct" result of the defendants' alleged fraudulent representation(s).  *Allstate Ins. Co. v. Receivable Finance Co., LLC,* 510 F.3d 398, 406 (5th Cir. 2007).

The plaintiffs argue, however, that their RICO Enterprise and mail fraud claim(s) do not require reliance as an element.  The Court disagrees.  A RICO recovery based on fraud, requires proof that the materials mailed were, in fact, fraudulent materials and how the plaintiffs relied upon them when they negotiated settlements in each of the 635.  *See Bridge v. Phoenix Bond & Indem. Co.,* 533 U.S. 639, 653-54 (2008).

Assume, however, that the plaintiffs are correct that reliance is not required to prove their RICO and mail fraud claim(s).  There remains the direct or proximate cause elements that must be asserted.  Nor are there pleadings stating how the plaintiffs overcome the hurdle of intervening

---

[7] *Tilton* involved an issue of alleged fraud in the context of religious representations.  It is a case issued by the Texas Supreme Court and addresses the "directness" or proximate issue that must exist to prove an injury.

cause which failing destroys the directness that fraud dictates[8]. Hence, the plaintiff must plead facts that "plausibly" establish that "but for" the fraudulent acts and mailings, the plaintiffs would not have suffered the injuries alleged. The plaintiffs have not done so. A RICO plaintiff cannot circumvent the proximate cause element simply by claiming that the plaintiffs' goal was to harm them. *Anza v. Ideal Steel Corp.,* 547 U.S. at 451, 452 (2006).

As well, a scheme or artifice to defraud requires proof of a fraudulent scheme or fraudulent act, *i.e.,* a predicate act of racketeering and reliance on that act to ones detriment. *See United States v. Whitfield,* 590 F.3d 325, 355 (5th Cir. 2009). *See Bridge v. Phoenix Bond & Indem. Co.,* 553 U.S. 639, 648 (2008). Hence, reliance is a necessity pleading requirement in order to claim an injury based on conspiracy or mail fraud. The use of the mail must be more than incidental; it must be consequential. *United States v. Tencer [?],* 107 F.3d 1120, 1125 (5th Cir. 1997). The plaintiffs' pleadings fail in these respects.

The plaintiffs' pleadings also reflect a failure to launch because the plaintiffs, after learning of the defendants' alleged scheme, participated in the alleged scheme, so to speak, so as make the alleged fraudulent scheme manifest. The act of engaging in settlement discussions with the attorneys in the 635 cases with knowledge of the defendants' alleged illegal practices constitutes complicity. *In re FirstMerit Bank, N.A.,* 52 S.W.3d 749, 758 (Tex. 2001); *see also Bank of Sarpan v. CNG Finance Corp.,* 380 F.3d 836, 840 (5th Cir. 2004). The plaintiffs' pleadings show that discussions occurred between the attorneys and the insurance adjusters before each of the 635 cases were settled and funds were paid. The settlements were negotiated settlements for which releases of liability were required. The plaintiffs' pleadings do not suggest that they rescinded the settlements, or that the insurance adjusters now suffer from "buyer's remorse". Nor do the

---

[8] The Court addresses the impact of the intervening cause of negotiated settlements later in this Memorandum.

8 / 10

plaintiffs assert that the settlements were conditional or fraudulent. Notably, the plaintiffs' plausible injury claims arise in a circumstance where there is no direct or proximate cause asserted. *See Holmes v. Securities Investor Protection Corporation,* 503 U.S. 258, 268 (1992).

In a previous lawsuit, Allstate asserted a similar fraud claim against a group of chiropractic clinics, employees and related entities for "grossly and knowingly [billing] for unnecessary and excessive" treatment and diagnostic procedures. *See Allstate Ins. Co. v. Receivable Finance Company, LLC,* 501 F.3d 398 (5th Cir. 2007). The evidence in that case revealed that Allstate did not make any direct payments to the healthcare providers. Nor did Allstate receive any request for payment from to any of the patients. *Id.* at 406-07. Instead, the insurance adjusters negotiated settlements with the patients' attorneys, without participation on the part of the chiropractic personnel or the clinics. *Ibid.* In that circumstance, as here, the plaintiffs cannot simply unwind the settlement process and declare a portion of the settlements paid as damages. *See Anza v. Ideal Steel Supply Corp.,* 547 U.S. 451, 459 (2006). Here, as in *Receivable Finance,* there is no direct relationship between the defendants' billings and the insurance carriers' settlements.

Finally, the act of settling the claims constitutes an "intervening cause", that severs the alleged fraud from the plaintiffs' alleged injuries due to any mailings. An intervening cause is an event that comes between the initial event in a sequence and the end result, thereby altering the natural cause of events that might have connected an alleged wrongful act to an injury. *See* [Black's Law Dictionary, Eighth Ed., West (2004)]. Between the alleged fraudulent event(s) and the plaintiffs' payment of settlement proceeds, the insurance adjusters negotiated what they apparently believed were acceptable and reasonable settlements in each of the separate 635 cases. The fact that the plaintiffs entered into negotiated agreements and were discharged from further liability, acts as a "bar" or "estoppel" against a future claim by the plaintiffs for damages. In each

negotiation, not only did the plaintiffs control the "purse", they had other consideration that were weighted and resolved. Therefore, the fact that the defendants mailed the patients' medical bills to the attorney for their use is simply an indirect and insubstantial factor in the claim process. There is also the issue of how 635 individual claims can be examined in one lawsuit. The plaintiffs have lumped 635 individual patient claims into a simple lawsuit. Each claim has its own unique factual underpinning and requires separate proof concerning medical history and medical necessity.

The Court is of the opinion that the plaintiffs' lawsuit even if plausible cannot be judiciously managed or tried as a single lawsuit. Hence, the Court concludes that the plaintiffs' lawsuit should be and it is hereby Dismissed with prejudice.

It is so Ordered.

SIGNED on December 23, 2024, at Houston, Texas.

Kenneth M. Hoyt
United States District Judge

10 / 10